ELIZABETH SNYDER, Appellant, *v.* SYLVESTER SNYDER et al., as Executors, etc., Respondents.

Where an order of General Term deciding an appeal refers to the opinion for the grounds of its judgment the opinion may be looked to to ascertain those grounds.

Where an executor, having a claim against the estate, duly assigns such claim, his assignee may maintain an action thereon the same as any other creditor; he is not confined to the remedy provided by statute (Code of Civ. Pro., § 2739) to enable the executor himself to enforce his claim.

(Argued April 24, 1884 ; decided May 6, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made July 2, 1883, which affirmed a judgment in favor of the defendants, entered upon the report of a referee. (Reported below, 30 Hun, 186.)

This action was brought to recover the sum of $1,624.48, with interest from December 4, 1878, *first,* for board and for care bestowed by the plaintiff upon William Snyder, defendant's testator, at his request, between August 6, 1874, and December 5, 1878, of the value and at the agreed price of $1,616.26; *secondly,* for dry goods, clothing and liquors furnished by the plaintiff and her husband to said testator at his request in the years 1876, 1877, 1878, of the value of $8.22. The plaintiff, who is the wife of defendant, Philip R. Snyder, alleges that before the commencement of the action her husband assigned to her all his interest in the matters above referred to, and also, all his right, title and interest in and to any account for board, care, main-

tenance and goods furnished to William Snyder by him and by the plaintiff, and that she is the owner of these claims; that William died on the 4th day of December, 1878, leaving a will by which the defendants were appointed his executors, and they have since qualified and are now acting as such; that her claim was presented to them and a demand made that it be allowed, or in default thereof that they consent to refer the same under the statute relating to such claims, " but that the said defendant, Sylvester Snyder, refused to allow the same, and also refused to refer it." Sylvester answered, setting up payment, and that the claim was part of a conspiracy between his co-executor and the plaintiff to defraud the estate. The referee found that the plaintiff was the wife of Philip R. Snyder, during the time the services alleged in the complaint were rendered; that she had then no separate estate, or business, or trade, and had no separate property other than what she claims in this action; that the testator died at the house of his son Philip, who had furnished him with board, washing and lodging for many years prior to August 7, 1874, at an agreed price, which was paid by William Snyder to Philip Snyder, on that day; that for several years before his death he required extraordinary care in the sickness to which he was subject, and more than ordinary care when in his usual health; that he was aged and infirm, afflicted with a disease loathsome and offensive to the senses, and the care of him was laborious and sickening to those having it in charge; that on or about the 17th day of January, 1874, he executed and delivered to Philip Snyder an instrument in writing, in words and figures, to-wit:

" For value received, I hereby release my son Philip R. Snyder from all liability for the use of my household goods, or the loss or destruction, thereof, and I agree, also, to pay the said Philip R. Snyder, for the services of himself and family in taking care of me since the time I sold him a part of my farm;" that at the date of the contract and down to the time of the death of William Snyder, the family of Philip Snyder consisted of the plaintiff, two sons and a grown up and then

unmarried daughter; that he boarded at the house of Philip from the 7th day of August, 1874, to the 4th day of December, 1878, and during that time Philip Snyder had the use or benefit of the portion of the farm still owned by William Snyder, free of charge or rent; that on several occasions since 1874 and prior to his last sickness, William Snyder promised to pay the plaintiff for his board, when in his usual health, four dollars per week and from one dollar per day to seven dollars per day when sick, according to the value of the services rendered; that the reasonable price of the board of William Snyder while he was in his usual health, and as it was furnished, was the sum of four dollars per week, and for the time shown, at that rate amounts to $752; that from August 7, 1874, to December 4, 1878, he was so sick for a period of two hundred and eight days as to require, and he received, extraordinary care and attention; that the reasonable price and value of those extraordinary care and services was three dollars per day, amounting to the sum of $624; that after 1874, and prior to his last sickness, William Snyder told plaintiff he would give her his notes, money and mortgages to secure her until she was paid for taking care of him, and told her to keep them until she got her pay for taking care of him; that plaintiff, at death of William Snyder, had possession of the money, notes and mortgages of William Snyder and still has them in her possession or under her control; that the extraordinary care and attention required by William Snyder in his sickness was rendered and given by plaintiff, Philip Snyder, his two sons and his daughter, the most arduous, disagreeable, as also the most meritorious portion of which was rendered and given by the plaintiff; that from August 7, 1874, and during all the time mentioned in the complaint in this action, Philip Snyder provided for the family and for the board of William Snyder and the plaintiff and his two sons and daughter, and supplied the house with provisions and the necessaries of life, and during the same period, the plaintiff performed and discharged the duties of wife, mother and housekeeper; that prior to the commencement of this action, Philip R. Snyder duly assigned

and transferred to George Barber the written instrument or agreement above set out and all his claims for compensation for the board of William Snyder and the services of himself and family, and said George Barber duly transferred and assigned the same to the plaintiff; that Philip R. Snyder assented to the arrangement made by his wife, the plaintiff, with his father, the said William Snyder, the testator, and transferred, as above stated, to the plaintiff all his claims for board of and services rendered to William Snyder by himself the said Philip R., or his family, including the services of the plaintiff; that prior to the commencement of this action, the plaintiff duly presented her claim in this action to the executors, who refused to allow the claim or to refer it, and as conclusions of law he found and determined " that the plaintiff, neither by the services she rendered, being the wife of the defendant executor, Philip R. Snyder, nor by force of any agreement with the testator, is entitled to maintain this action or recover for her services; that as assignee of the claim and demand of Philip R. Snyder, executor, she is not entitled to maintain this action against the executors of William Snyder, deceased, in this court," and directed judgment of nonsuit.

By the order of affirmance of the General Term, it was " ordered and adjudged that the judgment appealed from be in all things affirmed with costs, without prejudice to the presentation of any claims by Philip Snyder, or his attorney, and certain findings of fact are reversed according to opinion."

*S. D. Halliday* for appellant. The assignee of an executor or administrator is not limited to the same remedies to enforce his claim as were possessed by the executor or administrator. (2 R. S. 88, § 33; Code of Civ. Pro., §§ 2739, 2740; *Kearney* v. *McKeon,* 85 N. Y. 136.)

*Merritt King* for respondent. An executor can only transfer such rights, accompanied by such remedies, as he himself possesses, and his assignee stands in no better position as against the estate, has no greater or different rights or remedies than

were held and enjoyed by his or her assignor before the assignment. (2 R. S. 88, § 33 ; Laws of 1837, chap. 460, § 87; 2 R. S. [5th ed.] 175 ; Dayton on Surrogates [3d ed.], 394, §§ 33, 37 ; *Treat* v. *Fortune*, 2 Brad. 116 ; *Accounting of Kelly Estate*, 1 Tucker, 28–31 ; *Kyle* v. *Kyle*, 67 N. Y. 400, 408; *Shakespeare* v. *Markham*, 72 id. 400–407 ; *Bouton* v. *Flint*, 74 id. 476, 480–481 ; *Neilly* v. *Neilly*, 15 N.Y.W'kly Dig. 195.)

DANFORTH, J. Notwithstanding the general rule that an appellate court is not to look beyond the order to ascertain the ground of judgment, it may do so when the terms of the order are ambiguous, or when the order itself refers to the opinion. (*Tolman* v. *S. B. & N. Y. R. R. Co.*, 92 N. Y. 353.) We find it there stated that the referee should have found that the services were not rendered by the plaintiff on her own account, but on account of her husband, and that the indebtedness did not accrue to her, and that the findings are erroneous so far as they imply that there was any contract with the plaintiff. No fault is found with the estimate put upon the value of the services, or the amount actually due from the estate ; but the ground of the decision of the referee, and its affirmance by the Supreme Court, seems to be that the plaintiff's husband, being executor, could only collect, or be allowed his claim by proceedings under the statutes providing for such a case, and that the plaintiff, as his assignee, could have no other right. This also is the principal contention on the part of the respondent upon this appeal.

We are unable to agree in this view. If Philip (the husband) had not qualified, Sylvester would have been sole executor; and then, of course, his remedy for the debt due him would have been the same as that of any other creditor. Philip, the creditor, could have sued Sylvester, the executor, in the Supreme Court. Becoming executor, he forfeited no right as creditor, but assumed another character. He could not as creditor sue himself as executor. Before the statute, however, he could have paid himself, but since the statute he could not do so. (2 R. S. 88, § 33.) A remedy was, however,

provided by statute. Upon citation duly issued and served on parties interested he might have a hearing, and his claim, if just, might be allowed by the surrogate. (Ib., and also New Code, § 2739.)

The plaintiff, however, is under no disability. As Philips in the case supposed, could have sued Sylvester, she could sue both, and either could defend. No reason, therefore, is perceived why the doors of the Supreme Court should be closed against her. She is the real party in interest — has the legal as well as the equitable right of her assignor, whose presence as party plaintiff is in no degree necessary to a complete determination of all the questions involved. She is personally qualified to sue in any court, and cannot be defeated because the person under whom she claims would, if he had sued as plaintiff, have been disqualified by reason of his relation to the parties named as defendants. It is immaterial, therefore, to inquire whether the debt accrued to the plaintiff by contract with the testator — she might have contracted with him — or by assignment from Philip Snyder through Barber. In either view the judgment is wrong. It should be reversed and a new trial granted, with costs to abide the event.

All concur, except FINCH, J., not voting.

Judgment reversed.