# Kirk *v.* Van Horn et al., Appellants.

*Decedents' estates — Decedents' debts — Lien — Proceedings to keep lien alive—Notice to widow and heirs—Time within which scire facias must be issued—Judgment—Real estate—Acts of 1700, 1 Sm. Laws 7; 1705, 1 Sm. L. 57; April 19, 1794, 3 Sm. L. 143; April 4, 1797, 3 Sm. L. 297; February 24, 1834, P. L. 73; June 8, 1893, P. L. 392; June 14, 1901, P. L. 562; May 3, 1909, P. L. 386; June 7, 1917, P. L. 447.*

1. A proceeding to charge land with the debt of a deceased owner is strictly in rem, and no admission however solemn will dispense with compliance with the statutory provisions in regard thereto.

2. Vigilant prosecution in the statutory mode is essential to keeping the lien alive.

3. The statutes on the subject are of repose and not of limitation only, and inure to the benefit of the widow and heirs or devisees as well as purchasers.

4. A judgment in a suit against the personal representatives of itself creates no lien, but only serves to prevent the lapse of the statutory lien during the time fixed by the statute.

5. The widow and heirs or devisees need not be made parties in the first instance to the suit against the personal representatives, but must be made so within the statutory period.

6. If suit be brought within the time prescribed for so doing, the lien will continue for five years thereafter, whether judgment be recovered before or during the five-year period.

7. The widow and heirs or devisees must be made parties to the action within five years after the time prescribed for commencing the action.

8. The genesis of the rule that lands of a deceased owner are assets for the payment of his debts considered and the authorities reviewed.

9. Not decided whether the retroactive provision of the Act of June 7, 1917, P. L. 447, is constitutional as against existing creditors, in view of the fact that it gives them no time to protect themselves.

Argued October 7, 1919. Appeal, No. 61, Oct. T., 1919, by defendants, from order of C. P. Lawrence Co., June T., 1917, No. 57, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Kirk, Hutton & Company, formerly Smith, Hutton & Kirk Company, v. Anna D. Van Horn, Administratrix of the Estate of George H. Van Horn, deceased, Anna D. Van Horn, widow of George A. Van Horn, Walter Van Horn, Minnie Skidmore, Lawrence Savings & Trust Company, Guardian of Emil LeRoy Van Horn and Marietta Van Horn, minors, heirs of George H. Van Horn, deceased. Before BROWN, C. J., STEWART, MOSCHZISKER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Scire facias to revive and continue a judgment against an estate of a decedent with notice to the widow and children. Before EMERY, P. J.

The court made absolute the rule for judgment for want of a sufficient affidavit of defense. The heirs appealed.

*Error assigned* was the order of the court.

*Homer J. Muse*, with him *Robert K. Aiken*, for appellants.—The appellants contend that the lapse of more

than seven years from the death of George H. Van Horn to the issuance of the writ of scire facias was an extinguishment of the lien of the debt on the real estate which had descended to the widow and heirs of the decedent, and that before the scire facias issued the lien of such debt was gone and could not be fastened upon the land which had descended to the widow and heirs, by the issuance of the scire facias: Penn v. Hamilton, 2 Watts 53; Maus v. Hummell, 11 Pa. 228; Hope v. Marshall, 96 Pa. 395; Trevor v. Ellenberger, 2 P. & W. 94; Fetterman v. Murphy, 4 Watts 424; Corrigan's Est., 82 Pa. 495; Allen v. Krips, 125 Pa. 504; Phillips v. Allegheny Valley R. R. Co., 107 Pa. 472.

*Harry K. Gregory,* with him *Wm. J. Moffatt,* for appellee.—The fact that the judgment was obtained caused the lien of debt to "remain" beyond the seven years. That is, for the period of five years from the date of its rendition. And this is the general rule, except the judgment in the action be obtained before the expiration of the two-year period, in which event the lien is continued for the period of five years, not from the rendition of the judgment, but from the expiration of the two-year period from the decease of the debtor: Duncan v. Clark, 7 Watts 217; Pry's App., 8 Watts 253; Steel v. Henry, 9 Watts 523; Benner v. Phillips, 9 W. & S. 13; Keenan v. Gibson, 9 Pa. 249; Maus v. Hummell, 11 Pa. 228; Schwartz's Est., 14 Pa. 42; Corrigan's Est., 82 Pa. 495; Moore v. Skelton, 14 Pa. 359.

OPINION BY MR. JUSTICE SIMPSON, January 5, 1920:

On December 5, 1909, George H. Van Horn, the owner of real estate in Lawrence County, Pennsylvania, died intestate, leaving to survive him a widow and children. Letters of administration on his estate were granted to the widow. For the purpose of keeping alive the lien of their claim on decedent's land, plaintiffs, on December 2, 1911, brought suit against the administratrix; on

January 24, 1916, they recovered a verdict; on February 5, 1916, judgment was entered thereon; and, on April 12, 1917, they issued a writ of scire facias to revive and continue the lien of the judgment, with notice to the widow and children. The children filed affidavits of defense averring the lien on the land was lost because of a failure to issue the scire facias within seven years from the death of their father, as required by the Act of May 3, 1909, P. L. 386, a rule for judgment for want of sufficient affidavit of defense was made absolute, and the heirs prosecute this appeal.

In its opinion the court below held that if suit is brought and judgment recovered against the executor or administrator within the time specified for bringing suit, the lien of the debt continues only for five years after the expiration of this period, unless a scire facias with notice to the widow and heirs is issued within that time; but if suit is properly brought but judgment is not recovered until during the five-year period, then the scire facias may be issued at any time within five years after the entry of the judgment. If this conclusion is correct then the time when the scire facias must be issued, fluctuates according to the tardiness or diligence of the creditor, and may, in the second alternative, be five years later than in the first, for the creditor is not required to enter judgment on his verdict against the executor or administrator until the last day of the first five-year period; and, so also, if that conclusion is correct, the judgment would itself operate to extend the duration of the lien. Both of these results would be in direct antagonism to our decisions, which hold that the maxim vigilantibus non dormientibus jura subveniunt is especially applicable to this class of cases, these acts being statutes of limitation and repose for the benefit of widows, heirs and devisees and those claiming under them, as well as purchasers (Kerper v. Hoch, 1 Watts 9; Penn v. Hamilton, 2 Watts 53; Com. v. Pool, 6 Watts 32; Duncan v. Clark, 7 Watts 224; Greenough

v. Patton, 7 Watts 336; Com. to use v. Beachly, 262 Pa. 545); and also to those authorities which decide the only effect of the judgment is to prevent the lapse of the statutory lien and not to create a new one (Trevor v. Ellenberger, 2 P. & W. 94; Penn v. Hamilton, supra; Duncan v. Clark, supra; Maus v. Hummell, 11 Pa. 228, 233), the lien of the debt continuing to the end of five years from and after the date prescribed for the commencement of the action, whether judgment be recovered during the first or the second period (Penn v. Hamilton, supra; Duncan v. Clark, supra; Steel v. Henry, 9 Watts 523; Maus v. Hummell, supra; Schwartz's Est., 14 Pa. 42; Corrigan's Est., 82 Pa. 495; Hope v. Marshall, 96 Pa. 395); and this because "it is not the judgment rendered against the personal representatives that confers the quality of lien on the debts of a deceased person. This dates everywhere from his death": Bredin v. Agnew, 8 Pa. 233, 236. Happily the conclusion of the court below is not correct, but since the dicta which seems to support it have vexed the profession and the courts for nearly a century, perhaps a fuller consideration of the subject is permissible than otherwise might seem desirable.

The genesis of the rule that lands left by a decedent are assets for the payment of his debts, is: the clause in the original charter to William Penn whereby he and "the freemen of the said Province, their Delegates or Deputies, or the greater part of them, were authorized, so far as the Province of Pennsylvania was concerned, to alter the law of England in regard to the 'descent and enjoyment of lands'" (Duke of Yorke's Book of Laws, page 84); the laws agreed upon in England, which provided, inter alia, that all lands of a decedent shall be liable for the payment of his debts "except where there is legal issue, and then......one-third of the land only" (Ibid., page 100); the submission thereof, in accordance with the foregoing requirement of the charter, to the first general assembly, held at Upland, now Chester, on

December 7, 1682, which modified it, with Penn's approval, so as to provide that in the event of legal issue "one-half of the land only, [was reserved to them], in case the land was bought before the debts were Contracted" (Ibid., page 120) ; and the Act of May 31, 1693, (Ibid., page 231, vol. I, Votes and Proceedings of the House of Representatives of the Province of Pennsylvania, page 75) whereby all lands were made liable for payment of debts without any limitation in favor of heirs. Other laws to the same effect were passed in 1697 (Duke of Yorke's Book of Laws, page 264), and 1700 and 1705 (1 Smith's Laws 7 and 57), and thus the rule became firmly and finally established in Pennsylvania.

Under those acts the lien was indefinite in point of time, even as against a bona fide purchaser (Graff v. Smith's Administrators, 1 Dallas 481; Nokes v. Smith, 1 Yeates 238; Bruch v. Lantz, 2 Rawle 392; Trevor v. Ellenberger, supra; Steel v. Henry, supra; Konigmaker v. Brown, 14 Pa. 269; McMurray v. Hopper, 43 Pa. 468), and extended throughout the province and Commonwealth, binding all the lands of the decedent therein (Bredin v. Agnew, supra), whether or not letters testamentary or of administration were granted in the county where the lands were situated, or anywhere in the State, or even not at all. To cure this evil section 2 of the Act of April 17, 1794 (3 Smith's Laws 143), provided that the lien should not remain "longer than seven years after the decease of such debtor unless a demand therefor shall be made, or an action for the recovery thereof commenced and duly prosecuted against his or her executors or administrators, within the said period of seven years," and was amended by section 4 of the Act of April 4, 1797 (3 Smith's Laws 297), by omitting the clause providing that a demand without suit would continue the lien.

The question at issue in the present case could not have arisen under the Acts of 1794 and 1797, because thereby decedent's land might be sold on a judgment

against the executor or administrator only, without notice to the widow, heir or devisee: Graff v. Smith's Administrators, supra; Fritz v. Evans, 13 S. & R. 9; Payne v. Craft, 7 W. & S. 458; Walthaur's Heirs v. Gossar, 32 Pa. 259, 261, Sergeant v. Ewing, 36 Pa. 156. Because in Fritz v. Evans, supra, we expressed our regret that this should be so, sections 24 and 34 of the Act of February 24, 1834, P. L. 73, were passed. The former provided that "No debts of a decedent, except they be secured by mortgage or judgment, shall remain a lien on the real estate of such decedent longer than five years after the decease of such debtor, unless an action for the recovery thereof be commenced and duly prosecuted against his heirs, executors or administrators, within the period of five years after his decease." The later Acts of June 8, 1893, P. L. 392; June 14, 1901, P. L. 562, and May 3, 1909, P. L. 386, while reducing the time within which suit must be brought, and requiring certain other conditions to be fulfilled by the creditor in order to continue his lien, do not materially alter section 24 above quoted.

Section 34 of the Act of 1834, which remained in force until the Act of June 7, 1917, P. L. 447, was passed, provides that "In all actions against the executors or administrators of a decedent who shall have left real estate, where the plaintiff intends to charge such real estate with the payment of his debt, the widow and heirs, or devisees, and the guardians of such as are minors, shall be made parties thereto." The question here is: When must they be "made parties thereto"? and this brings us to the consideration of the numerous authorities bearing thereon.

A proceeding to charge land with the debt of a deceased owner is strictly in rem (Speer v. Sample, 4 Watts 367, 372; Soles v. Hickman, 29 Pa. 342, 346); as already pointed out the acts of assembly on the subject are statutes of repose and not merely of limitation, inuring in favor of the widow, heirs and devisees, as

well as of purchasers from them. No admission how-
ever solemn will dispense with strict compliance there-
with, if the lien is to remain against the land (Hemp-
hill v. Carpenter, 6 Watts 22; Alexander v. McMurry,
8 Watts 504; Baldy v. Brady, 15 Pa. 111; Bindley's
App., 69 Pa. 295; Oliver's App., 101 Pa. 299) ; and "the
leaning of this court, through the whole current of the
numerous decisions on this subject, has evidently been to
favor the heir and to require of the creditor the vigilant
prosecution of his demand in the mode pointed out":
Bindley's App., supra; Oliver's App., supra; Com. v.
Beachly, supra. So much is this so that although the
orphans' court has full authority to adjudicate what
debts are owing by a decedent, and is given plenary
power to authorize a sale of his lands for the payment
of such debts, an award in favor of a creditor is not
equivalent to an action under these acts (Bindley's
App., supra; Craig's App., 5 W. N. C. 243; Smith v.
Ribblett, 233 Pa. 300), and a sale of decedent's real
estate will not be authorized by that court if all liens have
been lost for want of suit or prosecution (Pry's App.,
8 Watts 253; Clauser's Est., 1 W. & S. 208, 215; Trin-
ity Church v. Watson, 50 Pa. 518, 525) ; if it does
authorize a sale when there were no debts which were
liens, no title will pass, and the sale may be attacked
collaterally in ejectment by the heirs (Smith v. Wild-
man, 178 Pa. 245; Smith v. Ribblett, supra) ; and the
heirs will take the surplus, even as against scheduled
debts, if the creditor has not kept his lien alive pending
the sale and confirmation thereof: Bindley's App.,
supra; Cake's App., 157 Pa. 457; Emerick's Est., 172
Pa. 191; Bowman v. Knorr (No. 2), 206 Pa. 272;
Cooper's Est., 206 Pa. 628; Dolan's Est., 231 Pa. 185.
These principles run through all our decisions on this
subject, and point the answer to the question under im-
mediate consideration.

In answering that question any one of four conclu-
sions was possible prior to the Act of 1917. It might

have been said the widow and heirs or devisees should always be made parties in the first instance; but it was not so held because section 24 of the Act of 1834, and the later Acts of 1893 and 1901, only required the suit to be brought against the "heirs, executors or administrators," without naming the widow or devisees, and by the Act of 1909 against the "executor or administrator" only; and because section 34 of the Act of 1834, when providing for making the widow and heirs or devisees parties to the action, fixes no time within which this must be done: Murphy's App., 8 W. & S. 165; Benner v. Phillips, 9 W. & S. 13; Atherton v. Atherton, 2 Pa. 112; Kittera's Est., 17 Pa. 416; Sanders v. Wagonseller, 19 Pa. 248; Colwell v. Rockwell, 100 Pa. 133. Under the Act of 1917 the present question could not arise, for, after providing for a suit within one year, it continues: "and then to be a lien only for the period of five years, unless the same be revived by writ of scire facias against the decedent, his heirs, executors or administrators, and the devisee, alienee, or owner of the land sought to be charged, in the manner now provided in the case of the revival of judgments."

The second possible alternative would have been to hold,—for precisely the reasons why the widow and heirs or devisees were not required to be made parties in the first instance,—that they need not be made parties at all until it is proposed to actually sell the land. This, however, was not adopted, because it would have continued the injustice we pointed out in Fritz v. Evans, supra, and would have defeated the very purpose of the Acts of 1834, 1893, 1901 and 1909. This was well stated in Benner v. Phillips, supra, where we said: "Unless by analogy we put some limit to the time, the lien against heirs, where suit is brought against the administrator, may be indefinite; for, where the creditor commences suit and obtains judgment against the personal representatives every five years, as he may, he might, at any distance of time, issue a scire facias and call upon the

heirs to show cause why the debt should not be levied off their land.   But this would be contrary to the whole course of legislation and of the judicial decisions which treat devisees and heirs in some measure as purchasers, freeing their lands from the lien of debts, unless duly prosecuted in a certain limited period."

To obviate this we held that the true interpretation of the acts required the creditor to proceed against the widow and heirs or devisees within a definite time.   This might have been, as the court below decided, within five years after the recovery of judgment against the executor or administrator, but the effect of so holding would have been to provide a fluctuating instead of a definite time, dependent on the diligence of the creditor, and would have given to the judgment, as a judgment, the effect of a lien; both of which results, as pointed out above, would contravene the purpose of the acts and be in violation of our repeated decisions.   The only remaining alternative was to hold that the scire facias making the widow and heirs or devisees parties to the action, must be issued within five years after the expiration of the period for commencing suit, and so we decided in McMurray's Administrators v. Hopper, 43 Pa. 468, 471-2; Hope v. Marshall, 96 Pa. 395; Allen v. Krips, 119 Pa. 1, and Allen v. Krips, 125 Pa. 504.

No decision has been pointed out to us, and we have found none, which antagonizes the above conclusion. As already stated, there are dicta upon the subject, resulting probably because the question now under consideration could not or did not arise, and hence the point was not then carefully considered.   Moreover, a number of the cases relied on by appellees frankly state that the extracts relied upon are but dicta, and still others of them do not even contain dictum on the subject. They will all, however, be referred to herein, so far as to show they do not actually rule the present question.

Trevor v. Ellenberger, 2 P. & W. 94; Duncan v. Clark, 7 Watts 217, and Pry's App., 8 Watts 253, arose under

the Act of 1797, which, as already pointed out, did not require notice to the widow and heirs or devisees. In Maus v. Hummell, 11 Pa. 228, and McLaughlin v. McCumber, 36 Pa. 14, the proceedings were under the same act, but before execution issued the Act of 1834 went into effect, section 34 thereof was held to apply, and since no notice was given to the widow, heirs or devisees, we decided no title passed by the sheriff's sales on the judgments against the personal representatives only.

In Fetterman v. Murphy, 4 Watts 424; Brobst v. Bright, 8 Watts 124, and Konigmaker v. Brown, 14 Pa. 269, judgment was recovered against each decedent in his lifetime, and to such judgments the acts do not apply; and in Steel v. Henry, 9 Watts 523, this court said it was not necessary to decide the present question, because by testator's will his debts were charged upon his real estate.

In Benner v. Phillips, 9 W. & S. 13, the decedent died July 18, 1832, before the Act of 1834 was passed, suit was brought against the personal representatives March 1, 1839 (decided to be in time because of section 70 of the Act of 1834), judgment was recovered therein November 24, 1840, and the sci. fa. to revive with notice to the widow and heirs was issued March 2, 1842. This was held to be in time, as it would have been under either act, and whether or not it had to be issued within a given time from the death or from the judgment. On the other hand, in Keenan v. Gibson, 9 Pa. 249, where the decedent died before the effective date of the Act of 1834, the lien was lost because the judgment recovered in 1833 against the personal representatives was not revived with notice to the widow and heirs or devisees until 1834, which was too late under either construction of the act.

In Bredin v. Agnew, 8 Pa. 233, suit was brought in decedent's lifetime, he died and his administrator was substituted as defendant in 1839, judgment was recovered in 1841, and a sci. fa. with notice to the widow

and heirs was issued in 1846. The exact dates are not given in the report, but the sci. fa. was in time no matter which of the present contentions is correct. This is true also of Schwartz's Est., 14 Pa. 42, where decedent died February 26, 1838, suit was brought and judgment recovered March 15, 1838, and a sci. fa. with notice to the widow and heirs was issued February 4, 1843; and of Moore v. Skelton, 14 Pa. 359, where some of the dates are not carefully stated, but it appears that the suit was commenced in time to February Term, 1847, judgment was recovered August 20, 1847, and judgment for plaintiff on the sci. fa. with notice to the devisee was affirmed by this court in December, 1850; and of Corrigan's Est., 82 Pa. 495, where decedent died July 20, 1856, suit was brought June 4, 1857, judgment recovered February 23, 1859, and a sci. fa. with notice to the widow and heirs was issued March 9, 1865.

None of the above cases being adverse to the conclusion reached by us, and none others having been even suggested as antagonistic thereto, we need only add that the sci. fa. in the present case was issued too late, the lien of the debt was lost as to the lands inherited by appellants, and the judgment must, therefore, be reversed, unless, as the court below seemed to think, section 15 of the Act of 1917, which relates to this subject and puts upon the creditor still further restrictions, in some way affects the present question because it is declared to be retroactive. We do not think it does. If it is applicable, and retroactive so far as the present case is concerned, then as plaintiffs did not bring suit within one year nor issue a sci. fa. to revive with notice to the heirs within six years from the death of decedent, the lien would be lost, exactly as we have held it to be under the Act of 1909. This obviates the necessity for considering the extent to which the Act of 1917 could constitutionally be held to be retroactive as against existing creditors, in view of the alleged fact that it gives

them no time to protect themselves, if it is held to be retroactive generally.

As the rights of the parties are fixed by the record, we might, perhaps, enter final judgment for defendants under the authority given by section 2 of the Act of May 20, 1891, P. L. 101; but since they have a complete remedy under section 20 of the Act of May 14, 1915, P. L. 483, we will make the usual order on reversing a judgment for want of a sufficient affidavit of defense.

The judgment of the court below is reversed and a procedendo awarded.